IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 07-40124-JAR |
| ) | 11-4099-JAR |
| LENARD DIXON, ) | |
| ) | |
| Defendant/Petitioner. ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Lenard Dixon's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 136). In his motion, Petitioner seeks relief on the grounds that (1) his counsel denied him effective assistance because she did not advise him that the Court could depart from the sentencing guidelines and she failed to disclose an oral agreement between the parties and (2) the prosecutor committed prosecutorial misconduct by arguing for an upward departure at sentencing. The Government responded and filed a Motion to Dismiss Defendant's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docs. 139 & 140). In its motion, the Government argues that the Court lacks jurisdiction because Petitioner's motion was untimely. For the reasons set forth below, the Court denies both the Government's and Petitioner's motion.

**I.    Legal Standards**

Under 28 U.S.C. § 2255(a):

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3]

Finally, Petitioner appears *pro se*. Therefore, his pleadings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[4] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, a court should do so despite a

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[3] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[4] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

2

failure to cite proper legal authority or follow normal pleading requirements.[5] It is not, however, "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[6] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[7]

## II.     Procedural Background

On July 16, 2009, Petitioner entered a plea of guilty to five counts charging violations of 18 U.S.C. § 1951, Hobbs Act robbery, as well as one count charging a violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm. Petitioner was represented by counsel at the change of plea hearing, during which Petitioner signed a binding plea agreement, stating that he understood that, if the Court accepted the written plea agreement and agreed to be bound by its terms, his sentence would not be less than 10 years and not more than 110 years. The written plea agreement further stated that Petitioner could withdraw his guilty plea only if the court rejected the proposed plea agreement. In both the petition to enter a guilty plea and the plea agreement itself, Petitioner stated that his guilty plea was voluntary. Also in both documents, Petitioner indicated that he was "fully satisfied" with the advice and representation of his counsel and that he believed his attorney did "all that anyone could do to counsel and assist" him. In exchange for Petitioner's guilty plea, the Government agreed not to file any additional charges against him arising out of the same facts as the Indictment. Petitioner signed the plea agreement and confirmed under oath at the change of plea hearing that he had read both the

---

[5]*Id.*

[6]*Id.*

[7]*See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

petition to enter a plea and the plea agreement and that he understood their contents. The Court accepted Petitioner's guilty plea.

During the sentencing hearing on December 14, 2009, the Court concluded that an upward departure from the sentencing guidelines was warranted and sentenced Petitioner to 84 months on Counts 1, 4, 7, 8, and 11 of the Indictment to be served consecutive to each other and 120 months on Count 14 of the Indictment to be served concurrent with the term imposed in Counts 1, 4, 7, 8, and 11. This sentence amounted to a total of thirty-five years imprisonment, which was within the sentencing range of the binding plea agreement. On December 29, 2009, Petitioner filed a Notice of Appeal with the Tenth Circuit. The Tenth Circuit dismissed Petitioner's appeal on May 24, 2010, finding that it was barred by the appellate waiver in the plea agreement. Petitioner did not file a petition for certiorari, but on August 29, 2011, he filed the instant motion under 28 U.S.C. § 2255, attacking his sentence on the grounds of prosecutorial misconduct and ineffective assistance of counsel.

## III. Analysis

Petitioner argues that the Court should grant him habeas relief under § 2255 for prosecutorial misconduct and ineffective assistance of counsel. The Government responds by arguing that the Court lacks jurisdiction to entertain the motion because Petitioner filed his § 2255 motion outside of the applicable statute of limitations. The Court finds that Petitioner's motion was timely under the mailbox rule. The Court, however, finds that no evidentiary hearing is necessary because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"[8] and dismisses Petitioner's motion on the merits.

---

[8] *See* 28 U.S.C. § 2255(b).

4

### A. Statute of Limitations

Generally, motions under 28 U.S.C. § 2255 are subject to a one-year statute of limitation period.[9] Section 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.[10]

"[A] criminal conviction becomes final when the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires."[11] The time for filing a certiorari petition expires ninety days after the date of entry of the judgment or order sought to be reviewed,[12] and so if no petition for certiorari is filed after an appellate judgment, the conviction becomes final ninety days after the entry of the judgment by the appellate court.

Here, Petitioner filed a direct appeal, and the Tenth Circuit filed a Judgment and Order denying the appeal on May 24, 2010. Petitioner did not file a petition of certiorari, and so his

---

[9]28 U.S.C. § 2255(f); *see also United States v. Valencia*, 472 F.3d 761, 763 (10th Cir. 2006).

[10]28 U.S.C. § 2255(f)

[11]*United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006) (citing *Clay v. United States*, 537 U.S. 522, 527 (2003)).

[12]*See* Sup. Ct. R. 13(3).

conviction became final ninety days after the May 24, 2010 Judgement and Order. Thus, Petitioner's conviction became final on August 22, 2010, and the statute of limitations to file a § 2255 motion ran one year later, on August 22, 2011. The § 2255 motion, however, was filed on August 29, 2011.

The date of filing for Petitioner's motion is outside of the statute of limitations. But because this is a filing made by an inmate, the mailbox rule may excuse the late filing.[13] The mailbox rule states that an inmate who places a habeas petition "in the prison's internal mail system will be treated as having 'filed' [the petition] on the date it is given to prison authorities for mailing to the court."[14] But before the mailbox rule applies, the inmate must attest to either (1) making timely use of the prison's legal mail system if a satisfactory system is available or (2) making "timely use of the prison's regular mail system by submitting a notarized statement or a declaration under the penalty of perjury indicating the date on which the document was given to prison officials for mailing."[15] The inmate bears the burden to prove the timely delivery to the prison authorities.[16]

Petitioner has met his burden to prove that he timely delivered his petition to the prison authority before the statute of limitations expired. Petitioner provided a notarized statement declaring that he gave prison official J. Singleton his § 2255 Motion to Vacate for mailing to United States Attorney Gregory G. Hough and Judge Julie A. Robinson on August 21, 2011, and

---

[13]*See United States v. Rodriguez*, 422 F. App'x 668, 669 (10th Cir. 2011).

[14]*Id.* (alteration in original) (quoting *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005)) (internal quotation marks omitted).

[15]*Id.* (citing *Price*, 420 F.3d at 1158).

[16]*Id.* (citing *Price*, 420 F.3d at 1158).

that this motion was notarized and executed on August 19, 2011.[17] Accompanying this sworn declaration is a letter from Singleton, dated December 2, 2011, confirming that on August 21, 2011, Singleton accepted legal mail from Petitioner, and that he placed the motion in the outgoing mail container.[18] This proof is sufficient to meet the burden established by *Rodriguez*. The Court may therefore entertain Petitioner's motion, and the Court must deny the Government's motion to dismiss for lack of jurisdiction.

### B. Merits

Although Petitioner timely filed his § 2255 motion, the Court must deny the motion because Petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel claims do not hold merit. Instead, the record conclusively shows that Petitioner is entitled to no relief.

#### 1. Ineffective Assistance of Counsel

The Court finds that the record conclusively demonstrates that Petitioner is not entitled to relief under his claim of ineffective assistance of counsel. Petitioner claims that his counsel provided ineffective assistance by failing to inform the court of the oral agreement between Petitioner and the Government and by failing to inform him that the court might sentence him outside of the guidelines range.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[19] A successful claim of

---

[17]Doc. 141, 10.

[18]*Id.*, at 9.

[19]U.S. Const. amend. VI.

ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[20] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[21] To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[22] This standard is "highly demanding."[23] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[24] In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[25] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[26]

Second, a defendant must show that his counsel's deficient performance actually prejudiced his defense.[27] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would

---

[20] 466 U.S. 668 (1984).

[21] *Id*. at 688.

[22] *Id*. at 690.

[23] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[24] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

[25] *Strickland*, 466 U.S. at 689.

[26] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[27] *Strickland*, 466 U.S. at 687.

have been different."[28] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[29] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[30] When ineffective assistance of counsel is alleged to have occurred at the plea stage, the defendant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."[31]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[32] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[33]

### a. Failure to Disclose the Oral Agreement to the Court

Petitioner alleges that his counsel provided ineffective assistance of counsel by failing to disclose the existence of an oral agreement between the parties, not included in the written plea agreement. As a result, Petitioner argues that this failure prejudiced him because the oral agreement did not bind any of the parties and he was not allowed to withdraw his guilty plea after the Court sentenced him outside of the orally-agreed-upon sentencing range. Petitioner,

---

[28] *Id*. at 694.

[29] *Id*.

[30] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[31] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[32] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[33] *Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

however, provides no evidence that any such agreement existed, and furthermore, the record, and Petitioner's own testimony given under oath, contradicts his claim that an oral agreement existed. Petitioner confirmed during the change of plea hearing that there were no other oral or written agreements in existence that were not included in the plea agreement:

> THE COURT: The written plea agreement is 13 pages long. The last page is mostly just signature lines. Is this document, this written plea agreement, is it your entire agreement with the government?
> THE DEFENDANT: Yes.
> THE COURT: So there are not any additional oral agreements or promises that aren't contained here in writing; is that correct?
> THE DEFENDANT: That's right.[34]

After the Government summarized the terms of the plea agreement at the change of plea hearing, the Court also emphasized that the terms written in the plea agreement control the parties' agreement:

> THE COURT: All right. Mr. Dixon, is there anything that the prosecutor just said that you disagree with or that you did not understand?
> THE DEFENDANT: No. I understand what he's saying.
> THE COURT: All right. And you agree with that summary of the terms of the plea agreement?
> THE DEFENDANT: Yes.
> THE COURT: Of course, it's the written plea agreement, what it actually says, that controls.[35]

The plea agreement signed by Defendant also contradicts his claim that an undisclosed oral agreement existed between the parties. Under paragraph 13, titled "No Other Agreement," the plea agreement states:

> Further, the defendant acknowledges that he has had the plea agreement read to him,

---

[34]Change of Plea Hr'g Tr., Doc. 117, at 7.

[35]*Id.* at 9–10.

understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties.[36]

Below paragraph 13, Petitioner signed and dated the plea agreement.

Thus, the record conclusively demonstrates that no other agreement besides those listed in the written plea agreement existed at the time of the change of plea and Petitioner understood the terms of that agreement when he entered his guilty plea. The Court therefore finds that Petitioner's first ground for ineffective assistance of counsel is contradicted by the record and inherently incredible.

### b. Failure to Inform Petitioner of Possible Sentence Outside Guidelines Range

Petitioner's second argument for ineffective assistance of counsel is similarly unavailing. Petitioner claims that his counsel did not inform him that the Court might sentence him outside of the guidelines range and that this failure amounted to ineffective assistance. The Court, however, finds that Petitioner's claims fail to meet either prong of *Strickland* and his ineffective assistance of counsel claim thus fails.

Petitioner claims that his counsel performed deficiently by failing to tell him that he could receive a sentence of more than 151 months of imprisonment or that he might receive a sentence above the guidelines range, namely the 35-year sentence he recieved. First, Petitioner's allegations are insufficient to prove his counsel's performance constitutionally deficient. "A miscalculation or erroneous sentence estimation by defense counsel is not a

---

[36]Plea Agreement, Doc. 98, ¶ 13.

constitutionally deficient performance rising to the level of ineffective assistance of counsel."[37]
Thus, Petitioner has not alleged any conduct on the part of his counsel that rendered his counsel's performance deficient.

Second, even if counsel's performance was deficient, Petitioner has not shown that he suffered any prejudice. The plea colloquy sufficiently informed Petitioner of the potential sentence that he could face, and after being so informed, he pleaded guilty. In the plea colloquy, the Court also explained that it typically uses the sentencing guidelines to determine an appropriate sentence, which are advisory and not mandatory. The Court noted that, if it accepted the binding plea agreement, it would sentence Petitioner under the plea agreement. The Court also explained that Petitioner could receive a sentence of up to 110 months of imprisonment under the plea agreement that would not exceed the statutory maximum sentence. Petitioner, under oath, acknowledged that he understood the possible sentencing consequences. Further, the Court described the process that it goes through to determine the appropriate sentence and explained that at the time of his change of plea hearing, no one could predict his possible sentence:

> THE COURT: All right. Thus, no one can predict with certainty what sentence you'll receive at this time except that we know because of the terms of the plea agreement that it will not be less than 10 years. Do you understand that?
> THE DEFENDANT: Yes.[38]

Petitioner's statements at the change of plea hearing show that he understood that he could receive a sentence of up to 110 years of imprisonment and that no one could predict his sentence with certainty. His ultimate sentence was well under the 110-year sentence that the Court

---

[37]*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993) (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988); *Wellnitz v. Page*, 420 F.2d 935, 936 (10th Cir. 1970)).

[38]Change of Plea Hr'g Tr., Doc. 117, at 20.

12

explained he could receive. Thus, Petitioner's claim that he did not know that he could be sentenced to 35 years is contradicted by his own testimony during the change of plea hearing.

His claim is also contradicted by the plea agreement. Petitioner testified under oath that he had reviewed the plea agreement with his attorney. The plea agreement also explains the maximum sentence for each of the counts to which Petitioner pled guilty. For five of the counts, the statutory maximum sentence was 20 years of imprisonment. For the last count, the statutory maximum sentence was 10 years. This creates a total maximum sentence of 110 years. The statutory maximum was also contemplated as a possible sentence by the parties' binding plea agreement: "The parties propose, as an appropriate disposition of the case, a total sentence of not less than ten (10) years, nor more than the combined statutory maximum term of imprisonment as to all counts of conviction (110 years) . . . ."[39] The plea agreement further states "because this proposed sentence is sought pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence."[40]

Both the plea agreement and the plea colloquy demonstrate that Petitioner was sufficiently informed at the change of plea hearing that he could receive a sentence of up to 110 years in custody. His sentence, which was far less than the statutory maximum, fell within the range explained to Petitioner in the plea agreement and during the plea colloquy. As a result, Petitioner's claim that he was prejudiced by his counsel's performance lacks any credibility. Therefore, Petitioner has not met his burden for either prong of *Strickland* and, as a result, is not entitled to relief under § 2255 for ineffective assistance of counsel.

---

[39]Plea Agreement, Doc. 98, ¶ 3.

[40]*Id.* ¶ 4.

## 2. Prosecutorial Misconduct

Petitioner submits that the prosecutor committed misconduct by breaching the oral agreement he had with Petitioner to recommend a sentence of 121 to 151 months of imprisonment and instead recommending 720 months of imprisonment. To prevail on a claim of prosecutorial misconduct, Petitioner must prove that (1) the prosecutor's conduct actually was improper and (2) the misconduct violated the defendant's due process rights.[41] Petitioner fails to meet this burden. First, it is not misconduct for a prosecutor to seek an upward departure at sentencing, unless the information provided by the prosecution to support the upward departure is false and unreliable.[42] Petitioner has not claimed that the prosecution offered false information when seeking the upward departure. Second, the prosecutor recommended a sentence well under the maximum sentence allowed by the written plea agreement. The plea agreement did not prevent the Government from recommending a sentence of 720 months—it limited the sentence to a 110-year maximum. Finally, as discussed above, the record contradicts any claim that Petitioner had an oral agreement with the Government. Because Defendant's claim for prosecutorial misconduct relies on an oral agreement not included in the written plea agreement, his claim must fail. Again, during the change of plea hearing, Petitioner confirmed that the written plea agreement submitted to the Court was the entire agreement and that there were no additional agreements between the Government and the Petitioner. The Court cannot therefore characterize the prosecutor's request for a sentence of 720 months as misconduct. There being no discernable instance of prosecutorial misconduct, the Court concludes that the Petitioner's

---

[41]*United States v. Kravchuk*, 335 F.3d 1147, 1153 (10th Cir. 2003).

[42]*United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1214 (10th Cir. 2008).

due process rights were not violated and Petitioner is not entitled to § 2255 relief for prosecutorial misconduct.

## IV. Certificate of Appealability

Rule 11 of the of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[43] A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[44] When the adverse finding is based on procedural grounds, the petitioner must also show "'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"[45] While Petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA, he must "prove something more than the absence of frivolity or the existence of mere good faith."[46] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[47] For reasons detailed above, Petitioner had not made a substantial showing of the denial of a constitutional right, and the Court denies a COA.

---

[43]28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[44]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[45]*Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[46]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[47]*Id.* at 336.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc. 136) is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Dismiss (Doc. 140) is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 5, 2012

                                                 S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 UNITED STATES DISTRICT JUDGE